UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 23-81464 |
| | ) | |
| Frank C. Nelson, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

Before the Court is the Debtor's motion to convert his bankruptcy case from chapter 11 to chapter 7 pursuant to section 1112(a) of the Bankruptcy Code. Also pending are creditor Nyle Anderson's motion to dismiss the case and the United States Trustee's motion to dismiss or in the alternative convert the case to chapter 7, each pursuant to section 1112(b). For the reasons discussed by the Court at the hearing on February 12, 2025, and as more fully set forth below, the Debtor's motion is granted and the motions brought by Mr. Anderson and the U.S. Trustee are denied as moot.

## I. PROCEDURAL HISTORY

Debtor Frank C. Nelsen filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code on November 28, 2023. The schedules accompanying his petition listed no secured creditors, priority claims of $27,000 to the Illinois Department of Revenue and $143,410.01 to the Internal Revenue Service, and a single general unsecured claim of $5,736,000 to Nyle Anderson. (ECF No. 1.) On December 1, 2023, the Debtor amended his schedules to redesignate Mr. Anderson's claim, still in the total amount of $5,736,000, as secured, with collateral valued at

$141,342.64.[1] (ECF No. 10.)   None of the claims are designated as disputed, contingent or unliquidated in either the original or amended schedules.[2]

The Internal Revenue Service subsequently filed a proof of claim in the amount of $140,307.21, which it later amended to a claim of $89,329.52, secured by what is described as "All of debtor(s) right, title and interest to property." The IRS proof of claim values the property securing its claim to be $27,121.18, characterizing the unsecured portion of the claim to consist of $30,268.57 in taxes or penalties entitled to priority under 11 U.S.C. § 507(a)(8), and the remaining $31,939.77 as non-priority debt. (Claim No. 1-2.)  The Illinois Department of Revenue filed a proof of claim for $19,468.48, asserting $14,301.58 of this amount to be entitled to priority under 11 U.S.C. § 507(a)(8) and the remainder to be general unsecured debt. (Claim No. 2-1.)

Two adversary proceedings relating to Mr. Anderson's claim are pending.  The first, brought by the Debtor, seeks to avoid any lien created by third-party citations to enforce Mr. Anderson's judgment on Cincinnati Life Insurance Company, Arthur J. Gallagher & Co. Insurance, Northwest Bank of Rockford and Redwood Retirement Specialists, Inc. The adversary complaint alleges these liens are avoidable preferences under section 547 or, in the alternative, that the citation respondents were not in possession of any non-exempt property of the Debtor to which a citation lien could attach. (Adversary Case 24-96001.)  Mr. Anderson also filed an adversary

---

[1] His amended schedule describes the collateral as "Northwest Bank Checking Acct ($1,342.64); Defined Benefit Plan – Redwoods ($130,000.00); Cincinnati Life Ins. Co. Policy." (ECF No. 10.)

[2] *See* Fed. R. Bankr. P. 3003 (creditors whose debts are scheduled and not designated as disputed, contingent or unliquidated need not file proof of claim and such scheduling constitutes prima facie evidence of the validity and amount of such claims).

complaint against the Debtor seeking a determination that the debt owed to him is nondischargeable under section 523(a). (Adversary Case 24-96004.) In the alternative, he argues that the Debtor should be denied a discharge under section 1141(d)(3)(C), partially incorporating sections 727(a)(2), (3), (4) and (5), alleging that the Debtor concealed property; failed to preserve financial records; failed to disclose assets, transfers and payments in his bankruptcy schedules; and failed to adequately explain the loss or deficiencies of assets. The parties are currently at issue in both actions.

Early in the case, Mr. Anderson sought to dismiss the bankruptcy. He principally[3] argued that the chapter 11 petition had been filed in bad faith, elaborating that it was a "two-party dispute" with Mr. Anderson and that no bankruptcy plan could be confirmed without Mr. Anderson's consent. (ECF No. 30, the "First Dismissal Motion.") After briefing, the Court held an evidentiary hearing at which the Debtor and Mr. Anderson testified and the Court received certain exhibits into evidence (the "April 2024 Trial"). The Court denied the First Dismissal Motion for the reasons stated on the record on May 10, 2024. (ECF No. 78.) Addressing Mr. Anderson's argument that this case must be viewed as the Debtor's next gambit in a long-running quarrel between ex-business colleagues, the Court noted that bankruptcies arising out of a dispute between two parties are not *per se* bad faith. Further observing that in any event the Debtor's bankruptcy involves at

---

[3] The First Dismissal Motion also noted that at the time the Debtor was delinquent on filing monthly operating reports and sought dismissal on that basis. The Debtor subsequently filed the missing reports.

least two other creditors, the Court also found that issues on the confirmability of a plan were better addressed at the confirmation hearing.

The Court granted Debtor's requests under section 1121 to extend the exclusivity period and the deadline for filing his plan and disclosure statement was finally set for May 17, 2024. (ECF Nos. 58, 79.) The plan and disclosure statement were filed by the Court's deadline. (ECF Nos. 81, 82.) The Debtor later amended his disclosure statement to address objections. The amendment was approved on September 30, 2024, at which time the Court scheduled balloting and the hearing on confirmation. (ECF No. 111.) Under his plan, the Debtor proposed, in principal part, to pay: administrative expenses by the effective date; the secured and priority portions of the IRS claim in full with 3% APR interest within 30 months through monthly payments of at least $2,500; and the priority portion of the IDOR claim in full with 3% APR interest within 18 months through monthly payments of at least $1,000. The plan addressed Mr. Anderson's claim by proposing — in the event that the Debtor's avoidance action was unsuccessful — to pay Mr. Anderson the value of his secured claim (which the plan estimated to be $131,342.64) in monthly installments paid within 60 months. (ECF No. 81.)

To fund the distributions, the plan provided for the Debtor to devote his full disposable income towards the monthly payments for 60 months, which monthly amount he estimated would average at least $10,100, but in any case would be no less than $3,650 per month. Monthly plan payments exceeding $3,650 were to be applied as a "waterfall," first to pay any remaining administrative expenses, next to

Page 4 of 26

the secured and priority claim of the IRS followed by the IDOR priority claim, and then to any non-avoided secured claim of Mr. Anderson.  The remainder paid into the plan after those payments would be distributed *pro rata* to the general unsecured class, consisting of the unsecured portions of the IRS, IDOR and Anderson claims.

Mr. Anderson filed an objection to confirmation on October 30, 2024.  The Debtor filed the report of balloting on November 5, 2024, indicating that neither the IRS nor the IDOR returned completed ballots. The Debtor further reported that Mr. Anderson's ballot, the only one returned, rejected the plan with respect to both his secured and unsecured claims. (ECF No. 120.)  At the next hearing on November 6, 2024, Debtor's counsel acknowledged that with no accepting class, confirmation was not possible.  Indicating that his client did not intend to amend his plan, counsel announced that the Debtor would seek to convert his case and Mr. Anderson's attorney announced that his client would move for the dismissal of the case.  The Court set a deadline and briefing schedule for the suggested motions and for any motion which the U.S. Trustee wished to present.

The Debtor filed his motion to convert the case to chapter 7 on November 13, 2024. (ECF No. 123, the "Motion to Convert.")  Later that morning, Mr. Anderson filed his motion. (ECF No. 126, the "Anderson Motion to Dismiss.")  The U.S. Trustee filed a motion to dismiss the case or, in the alternative, to convert the case to chapter 7 later that day. (ECF No. 127, the "UST Motion.")  The cross-motions were fully briefed after which the Court heard oral argument.  During that hearing the parties all took the position that the Court could rule on the motions based on the testimony

and evidence received at the April 2024 Trial as well as the Court's docket. With the consent of all movants, the Court continued the cross-motions for ruling and granted the parties leave to file stipulations and supplement any authority and record designations. The Debtor and Mr. Anderson each filed supplemental statements. (ECF Nos. 150, 152.) After consideration of the arguments and submissions of the parties, the Court reached the findings and made its rulings set out at the February 12 hearing and as further set out herein.

## II.  JURISDICTION

The district court has "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). In accordance with 28 U.S.C. § 157(a), the district court has referred this and all other cases under title 11 to this Court. N.D. Ill. R. 40.3.1(a). The three pending motions seek to convert or dismiss the bankruptcy case, and therefore the issues presented are central to the administration of the bankruptcy estate and a core matter over which this Court has authority to enter final orders. 28 U.S.C. § 157(b)(2)(A), (O); *In re Smith*, No. 15 B 36486, 2016 WL 7441605, at *1 (Bankr. N.D. Ill. Dec. 27, 2016). Finally, the motions arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.  DISCUSSION

### A.  The Debtor's Statutory Right to Convert and the *Marrama* Exception.

The Debtor moves to convert his case to chapter 7 under section 1112(a) of the Bankruptcy Code which provides that:

The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—

(1) the debtor is not a debtor in possession;

(2) the case originally was commenced as an involuntary case under this chapter; or

(3) the case was converted to a case under this chapter other than on the debtor's request.

11 U.S.C. § 1112(a).  "Section 1112(a) appears to give the debtor an absolute right to convert a chapter 11 case to a case under chapter 7, provided that none of three limited exceptions apply." 7 Collier on Bankruptcy P 1112.02 (16th 2024).  Prior to the Supreme Court's decision in *Marrama v. Citizens Bank*, some courts had held that a debtor has an "absolute right" right to convert under section 706(a), which has language similar to the language in section 1112(a). 549 U.S. 365, 368 (2007). However, in *Marrama*, the Court recognized a non-statutory exception where a debtor "forfeited his right" to convert through "prepetition bad-faith conduct." *Id.* at 371, 374.

In that case, seven months before filing his chapter 7 petition, Marrama transferred for no consideration valuable real estate to a newly created trust for the admitted purpose of protecting the property from creditors. *Id.* at 368.  He then made inaccurate or misleading statements about the property and his financial affairs in his bankruptcy schedules.  When the chapter 7 trustee indicated his intent to recover the property for the estate, the debtor moved to convert his case to chapter 13.  The chapter 7 trustee objected, arguing the request to convert was in bad faith and would constitute an abuse of the bankruptcy process.  Sustaining the objection, the bankruptcy court  denied the motion to convert.

The Supreme Court ultimately affirmed, noting first that section 706(d) contains an exception that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."  The Court also observed that under section 1307(c) a chapter 13 case can be dismissed "for cause," including for prepetition bad-faith conduct. *Id.* at 373-74.  Reasoning that, in "practical effect, a ruling that [a] Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13," the Court concluded that the "text of § 706(d) . . . provides adequate authority for the denial" of the motion to convert. *Id.* at 374.[4]

Identical to section 706(d), section 1112(f) states that "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 1112(f).  Similar to dismissal of a chapter 13 case under section 1307(c), a chapter 7 case also can be dismissed "for cause." 11 U.S.C. § 707(a).  Thus, courts have found the reasoning of *Marrama* equally applicable to a chapter 11 debtor's request to

---

[4] *Marrama* also suggests in the alternative that a bankruptcy court's inherent power to sanction abusive litigation practices or its powers to prevent abuse of process under section 105(a) of the Bankruptcy Code is "surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." 549 U.S. at 375. However, the Court later characterized that portion of the opinion as "dictum" and "[a]t most . . . suggests that in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code." *Law v. Siegel*, 571 U.S. 415, 426 (2014) (finding no authority to "surcharge" or deny a debtor's exemption of property based on a debtor's bad faith conduct, noting in light of the enumerated statutory exceptions that courts are "not authorized to create additional exceptions").

convert to chapter 7 – that "[c]ourts are directed by § 1112(f) to look at the standards for debtors under the chapter to which the debtor is hoping to convert, and if that debtor could not be a debtor under that chapter because the bankruptcy court would exercise its discretion to immediately reconvert the case, then there is no reason to convert the chapter 11 just to dismiss or re-convert thereafter." *Kearney v. Unsecured Creditors Comm.*, 625 B.R. 83, 99 (B.A.P. 10th Cir. 2021). This is not to say the analysis of a request to convert from chapter 11 to 7 is *identical* to a request from chapter 7 to chapter 13. As noted in *In re Modern Metal Products Co.*, the concern in *Marrama* that allowing even a temporary conversion to chapter 13 by a bad-faith debtor could "provide a debtor with an opportunity to take action prejudicial to creditors" is less of a concern for conversion from chapter 11 to chapter 7 where the former debtor-in-possession is "agreeing to relinquish control over the estate by converting to Chapter 7." 422 B.R. 118, 122 (Bankr. N.D. Ill. 2009).

As the movant, the Debtor bears the initial burden to demonstrate that the statutory exceptions under section 1112(a) do not apply – that the debtor is a debtor in possession, that the case was not originally an involuntary case under chapter 11, and that the case was not previously converted to chapter 11 on another party's request. *In re Johnson*, 546 B.R. 83, 98 (Bankr. S.D. Ohio 2016). The opposing parties, Mr. Anderson and the U.S. Trustee, have the burden to prove facts supporting their objections to conversion, including the alleged bad faith. *Id.* (citing *Condon v. Smith (In re Condon)*, 358 B.R. 317, 326 (B.A.P. 6th Cir. 2007) ("The Panel concludes that the burden of proving a lack of good faith in the context of § 706(a) is

on the party opposing the conversion.")). *See also, e.g.*, *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992) (at least in context of motion to dismiss for cause under section 1307(c), burden was on creditor to show lack of good faith). Because in section 1112(a) "Congress has granted a clear right to debtors to decide which chapter their case should proceed under," courts should not lightly "overturn that choice without a strong showing of an abuse of the system or clear detriment to parties in interest." *Modern Metal*, 422 B.R. at 124.

### B. The Statutory Exceptions Do Not Apply to the Debtor's Motion.

The parties do not dispute that the case was commenced through a voluntary petition under chapter 11, has not previously been converted, and no case trustee has been appointed. In his response to the Debtor's motion, Mr. Anderson argues that as a practicality the Debtor is not a "debtor in possession." The Court disagrees. The term "debtor in possession," as used throughout chapter 11, is a broad term specifically defined to mean the "debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case." 11 U.S.C. § 1101(1). Section 1104 governs requests for appointment of trustees in chapter 11, which must be made "before confirmation of a plan, on request of a party in interest, or the United States trustee, and after notice and a hearing." 11 U.S.C. § 1104. The docket reflects that no such request has been made in this case and the court has not ordered appointment of a trustee.

While acknowledging the defined term, Mr. Anderson next argues that the Debtor should not be "considered a debtor in possession" for purposes of section 1112(a), based on the assertion that "the Debtor has not made a monthly profit in

Page 10 of 26

many months and has been living off the sale of real estate." (ECF No. 138 at 5.) But the term "debtor in possession" is expressly defined in chapter 11 and courts "are generally reluctant to give the 'same words a different meaning' when construing statutes." *Bank of Am., N.A. v. Caulkett*, 575 U.S. 790, 797 (2015) (quoting *Pasquantino v. United States*, 544 U.S. 349, 358 (2005)).

Mr. Anderson cites two cases to support his contention that for purposes of section 1112(a) "debtor in possession" bears a more restricted meaning than the definition given in section 1101(1). The first, *In re Novus Structures, Inc.*, does not involve a motion to convert. 653 B.R. 429 (Bankr. N.D. Ill. 2023). That case involved instead competing motions by a debtor in possession and creditor regarding estate property held by a receiver. Granting the debtor's turnover motion, the bankruptcy court began its discussion by noting that the high burden imposed by section 1104 for the "extraordinary remedy" of appointment of a trustee shows "a strong presumption that the debtor is to remain in possession" of property of the estate in a chapter 11 case. *Id.* at 440. Nothing in the opinion suggests that had the court excused the receiver from turning over the estate property and it denied the debtor in possession's motion the debtor would not remain the "debtor in possession" for purposes of chapter 11. Mr. Anderson's reliance on the second case, *In re Modern Metal Products Co.*, is also misplaced. Although *Modern Metal* does involve a motion to convert under section 1112(a), it does not support expanding the meaning of "debtor in possession" beyond the statutory definition. There, the court rejected the unsecured creditors committee's request to deny the debtor in possession's motion to convert to chapter 7

Page 11 of 26

because the debtor company had ceased active business operations, liquidated most of its real and personal property, and a liquidating plan (submitted by the committee) awaited confirmation. The court granted the debtor's motion to convert, recognizing the movant nevertheless met the definition of "debtor in possession" for purposes of section 1112(a) and had the right to seek conversion. 422 B.R. at 121, 125.

### C. The Court Does Not Have General Discretion to Deny a Request to Convert Brought Under Section 1112(a).

Mr. Anderson next argues that the term "may" found in section 1112(a) gives the court general discretion to deny a request to convert. Here he suggests that "because the statute does not provide that the court 'shall' grant a motion to convert," the court has such discretion. (ECF No. 138 at 5.) But the Supreme Court rejected an almost identical argument in *Law v. Siegel*, 571 U.S. 415 (2014). There, the Court addressed the language of section 522(b) which provides that a "debtor may exempt" property from the bankruptcy estate as specified in the statute. As the Court explained, "the subject of 'may exempt' in § 522(b) is the debtor, not the court, so it is the debtor in whom the statute vests discretion," and while a "debtor need not invoke an exemption to which the statute entitles him . . . if he does, the court may not refuse to honor the exemption absent a valid statutory basis for doing so." *Id.* Under the same reasoning, the term "may" in section 1112(a) can be understood to vest discretion in the debtor to seek conversion, but not in the court to refuse. Further, the Supreme Court in *Marrama* did not adopt the reasoning of the court of appeals, which had "emphasiz[ed] that [section 706(a)] uses the word 'may' rather than 'shall.'" 549 U.S. at 370. Instead, the Court affirmed the decision of the lower court under

Page 12 of 26

section 706(d) and 105(a) on the basis of bad-faith conduct. *Id.* By doing so, the Court implicitly rejected reading "may" to grant a broader general discretion to the court as Mr. Anderson now urges. *See id.* at 370, 374 ("The class of honest but unfortunate debtors who do possess an absolute right to convert their cases from Chapter 7 to Chapter 13 includes the vast majority of the hundreds of thousands of individuals who file Chapter 7 petitions each year.").

Following *Law*, the bankruptcy court in *Kimrow, Inc. v. Cohilas (In re Kimrow, Inc.)* considered a similar argument that the term "may" in section 1112(a) gave the court broad discretion over a request to convert, but the court found that the term "may" refers to the *debtor's* choice to request conversion and not to the court's authority to refuse the request for reasons not provided in the statute. 534 B.R. 219 (Bankr. M.D. Ga. 2015). As the court explained:

> the statute does not instruct the *court* to take any action but rather addresses the *debtor*, giving the debtor a right—if the debtor meets the statute's prescription—to convert. The language is unequivocal. To say that the Court can add any requirement it deems fit eviscerates the right given by Congress to the debtor. Further, the legislative history cited by the Debtor (though unnecessary in light of the statute's plain meaning) confirms this point, stating that "the debtor [has] an absolute right to convert a voluntarily commenced chapter 11 case in which the debtor remains in possession to a liquidation case."

*Id.* at 223 (citing S. Rep. No. 95-989 (1978), at 117 reprinted in 1978 U.S.C.C.A.N. 5787, 5903, 1978 WL 8531). Courts that have held or suggested that section 1112(a)'s reference to "may" gives the court unfettered discretion to deny a debtor's motion to convert either pre-date *Law* or rely solely on cases pre-dating *Law* and are not persuasive. *See, e.g., In re Adler*, 329 B.R. 406, 409 (Bankr. S.D.N.Y. 2005) (pre-*Law*

case stating that section 1112(a) "does not state that the Court 'shall' honor his request"); *In re Copper*, 426 F.3d 810, 816 (6th Cir. 2005) (pre-*Law* case stating that section 706(a) does not use "the more mandatory phrase of 'shall be able to convert'"); *Modern Metal*, 422 B.R. at 121 (pre-*Law* case citing *Adler*); *In re Giuliani*, 661 B.R. 493, 500 (Bankr. S.D.N.Y. 2024) (citing only *Adler*, with no discussion of *Law*); *Johnson*, 546 B.R. at 168 (citing *Copper* and *Adler*, with no discussion of *Law*). *See also, e.g.*, 7 Collier on Bankruptcy P 1112.02 (16th 2024) ("The rationales in cases such as *Adler* and *Ponzini* that focus on the term 'may' as opposed to 'shall' has been seriously undermined by the Supreme Court in *Law v. Siegel*.").

Mr. Anderson also argues that dismissal is in the "best interest of the creditors and the estate," urging this Court to "choose" to dismiss the case. This argument seems to conflate section 1112(b) and section 1112(a). Where a party in interest seeks dismissal or conversion under section 1112(b) and has shown "cause" for such relief, the court "shall" dismiss or convert the case (or if remaining in chapter 11, appoint a trustee or examiner) unless the limited exception in section 1112(b)(2) applies. The decision of the best remedy under section 1112(b)(1) is within the court's discretion. *In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009); *In re Aurora Memory Care LLC*, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018). Although courts have considered many factors in applying this discretion, section 1112(b)(1) asks for the "best interest of creditors and the estate" – not the debtor – and therefore often the most important question is which "course of action . . . results in the largest number of [creditors] being paid the largest amount of money in the shortest amount of time." *Aurora Memory Care*, 589

B.R. at 643.    Assets being "available for a chapter 7 trustee to liquidate and administer for the benefit of unsecured creditors" weighs heavily in favor of conversion, while a lack of such assets weighs in favor of dismissal. *Id.* (quoting *In re Green Box NA Green Bay, LLC,* 579 B.R. 504, 511 (Bankr. E.D. Wis. 2017)).

But *Aurora Memory Care*, and most cases discussing the standard under section 1112(b), involved only a motion of a creditor under section 1112(b), not a motion by the debtor to convert under 1112(a).    Where the exceptions listed in section 1112(a) and (f) do not apply, the choice of conversion "is presumptively given to the debtor" and section 1112(a) "does not mandate that the Court make an independent evaluation of what is in the best interests of creditors in granting a debtor's request to convert." *Modern Metal,* 422 B.R. at 125. *See also, e.g., In re Hesed Enterprises, LLC,* No. 16-10299-RLJ7, 2017 WL 4457434, at *8 (Bankr. N.D. Tex. Sept. 29, 2017) ("Unlike a motion to convert or dismiss a chapter 11 case initiated by a trustee or party in interest under § 1112(b), such a motion by a debtor does not require a hearing and analysis by the court on what is best for creditors and the estate."). While some cases have held that the right to convert under section 1112(a) is "not absolute," after *Marrama* and *Law* the limitation they refer to has been *Marrama's* ineligibility due to bad faith. *See, e.g., Johnson,* 546 B.R. at 170 ("As things stand, because the Debtor has exhibited bad faith, his case would be subject to dismissal under § 707(a) if it were converted to Chapter 7, meaning that he may not be a Chapter 7 debtor under the reasoning set forth in *Marrama.*").[5]

---

[5] Although criticized by the court in *Johnson*, at least one court has found sufficient differences between conversion to chapter 13 under section 706(a) and conversion to chapter 7 under section

Nor is the Court convinced that it may disregard the debtor's right to convert by simply ruling first on the motions to dismiss, thereby rendering the Debtor's request moot. In *Law v. Siegel*, the Supreme Court not only cautioned against using supposed equitable powers to create additional non-textual exceptions to a debtor's statutory rights, but also against substantively limiting those rights procedurally. The Court abrogated not only cases that claimed non-textual authority to disallow a debtor's claimed exemption but also cases that purported "to bar a debtor from amending his schedules to claim an exemption, which is much the same thing." 571 U.S. at 425.

### D.  The Objectors Fail to Demonstrate That *Marrama's* Exception Applies.

Mr. Anderson does invoke the *Marrama* exception in his response to the Debtor's motion, stating "Anderson had continually questioned the Debtor's good faith in filing this bankruptcy case." (ECF No. 138 at 4.)  But he offers scant explanation or support for this contention.  Generally, in bankruptcy, good or bad faith "should be determined by looking to the totality of the circumstances." *In re Love,* 957 F.2d 1350, 1356 (7th Cir. 1992).  To preserve the discretion of the court "to weigh the evidence first hand in making good faith evaluations," the Seventh Circuit opted against a clear test or specific list of factors. *Id.* at 1357.  Instead, the court directed that the "inquiry often comes down to a question of whether the filing is fundamentally fair," noting the test is both a subjective and objective inquiry. *Id.*  At

---

1112(a) to distinguish *Marrama* and find no 'bad faith' or 'extreme circumstances' exception to the right in section 1112(a). *In re Kimrow, Inc.*, 534 B.R. 219 (Bankr. M.D. Ga. 2015) (finding in the alternative that the objector had failed to demonstrate bad faith or extreme circumstances).

least in the context of determining whether a chapter 13 case is filed in good faith, *Love* presents a "nonexhaustive list" which "exemplifies some of the factors that are relevant":

> the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id.*

Most of Mr. Anderson's objection focuses on the benefits or detriments to creditors for conversion or dismissal – issues more relevant to section 1112(b) than to voluntary conversion under section 1112(a).  Mr. Anderson's allegations that appear to relate to his bad-faith claim are: the Debtor spent more than $12,000 during October 2024 but lost money; the basis of his $5.7 million judgment against the debtor was a "fraudulent diversion scheme"; and the Debtor's testimony that he filed his bankruptcy petition to prevent the turnover of assets and to allow the Debtor to have a normal life free from Anderson's collection efforts. (ECF No. 138 at 2.)  Mr. Anderson also complains that if the case is converted to chapter 7 the Debtor will continue "to enjoy the automatic stay" while Mr. Anderson incurs substantial expense continuing to litigate the two adversary proceedings. (*Id.*)

As a general matter, it "is not bad faith to seek to gain an advantage from declaring bankruptcy — why else would one declare it?" *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992).  As the Third Circuit observed in *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.),* "we

believe it to be a truism that it is not bad faith to seek to avail oneself of a particular protection in the Bankruptcy Code--Congress enacted such protections with the expectation that they would be used." 384 F.3d 108, 128 (3d Cir. 2004). At least in the context of section 1112(b), the "clearest case of bad faith is where the debtor enters Chapter 11 knowing that there is no chance to reorganize his business and hoping merely to stave off the evil day when the creditors take control of his property." *James Wilson Assocs.*, 965 F.2d at 170.

While here the Debtor was ultimately unable to obtain confirmation of a chapter 11 plan, Mr. Anderson and the U.S. Trustee have not proved that he engaged in undue delay or never intended to reorganize. In their motions to dismiss, both Mr. Anderson and the U.S. Trustee allege the Debtor's failure to "confirm a plan, within the time fixed by this title or by order of the court" as the "cause" warranting dismissal or conversion. The Debtor concedes that this constitutes "cause" to dismiss or convert, 11 U.S.C. § 1112(b)(4)(J), but the movants have not shown that the Debtor is solely to blame for the failure to confirm a plan or acted in bad faith. The Debtor filed his plan and disclosure statement within the limits set by the Court. While the Debtor ultimately conceded that the plan was not confirmable, he did so only after Mr. Anderson voted to reject the plan and the remaining two creditors — neither of whom lodged any objection to the proposed plan — filed no ballots with the result that no class affirmatively accepted the plan. But it has not been shown that the plan was otherwise patently unconfirmable or that the Debtor is purely to blame for the failure to obtain affirmative votes in favor of confirmation. *Cf., e.g., In re Woodruff,*

580 B.R. 291, 298-99 (Bankr. M.D. Ga. 2018) ("[M]ost courts acknowledge that filing a Chapter 11 without a 'realistic possibility of an effective reorganization' in an attempt to 'delay or frustrate the legitimate efforts [of creditors]' constitutes bad faith." (quoting *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984))). The plan proposed to pay all creditors at least as much as they would have received in a chapter 7 liquidation and purported to devote all of the Debtor's disposable income to plan payments for 60 months. Nor has it been demonstrated that the Debtor failed to comply with the Court's scheduling orders or abused the plan confirmation process.

Moreover, while a Debtor's inability to timely confirm a plan is a significant concern when considering whether a case should remain in chapter 11, that is of less significance in chapter 7 where the paramount goal is liquidation and not plan confirmation and reorganization. Nor are worries over the Debtor's expenses or use of property as much of an issue in chapter 7 where an independent chapter 7 trustee receives possession and control of the assets of the estate. Mr. Anderson vaguely alleges that the Debtor has "since 2010, secreted and hidden substantial assets based on what Anderson knows and has stated previously in this bankruptcy proceeding." (ECF No. 152 at 3.) But the only asset that Mr. Anderson specifically identifies in his motion, reply or response in this respect was not an omitted asset, but rather one whose value he disputes.

In the Debtor's schedules filed with his petition he lists in Schedule A/B an interest in an insurance policy, described as:

| | |
|---|---|
| Company Name: | The Cincinnati Insurance Company – Permanent Life Insurance Policy. Cash Surrender Value - $22,000.00 |
| Beneficiary: | Spouse |
| Surrender or refund value: | $22,000.00 |

(Schedule A/B, ECF No. 1.).   Three days after filing the petition, he filed amended

schedules, which changed the description of the policy to:

| | |
|---|---|
| Company Name: | The Cincinnati Insurance Company – Permanent Life Insurance Policy. No cash surrender value |
| Beneficiary: | Debtor |
| Surrender or refund value: | $0.00 |

(Schedule A/B, ECF No. 10.)

Mr. Anderson alleges that "based on the recollection of counsel" the Debtor

testified at the section 341 meeting of creditors that the policy "had no value." (ECF

No. 138 at 3.)[6]  He argues that the Debtor now takes a different position by arguing

that conversion to chapter 7 is in the best interests of creditors because a chapter 7

trustee could administer the policy as an asset of the estate.  But these positions are

not necessarily inconsistent – the schedule form asks for the surrender value, while

the Motion to Convert speaks to the possibility of a chapter 7 trustee either selling

the policy on the secondary market or waiting to collect the death benefit.  According

to the Debtor's testimony at the April 2024 Trial, the policy is on the life of Mr.

Anderson, with a death benefit of $1,000,000, and was purchased while the Debtor

---

[6] It is unclear what date this "recollection" is based upon.  Based on statements filed by the U.S. Trustee, the meeting of creditors was initially held on January 3, 2024, continued to January 17, continued again to February 7, continued again to and concluded on February 28, 2024. (ECF No. 23, 26, 36, 42.)  Approximately two weeks after the initial meeting of creditors, the Debtor filed second amended schedules, which described the policy in the same way as the first amendment. (ECF No. 25.)

and Mr. Anderson were business partners. (*See also* Anderson Ex. 29.)  The record suggests that while the policy had "some cash value" at the time of hearing, the March premium had not been paid and the policy would be sustained by such cash value only "for a certain number of months."[7]  At least for purposes of the Motion to Convert, Mr. Anderson has not proved that the Debtor's description of the policy in his schedules or at the meeting of creditors demonstrate that the case will necessarily be dismissed if converted to chapter 7.

Although more related to his section 1112(b) argument that conversion to chapter 7 is not in the best interests of creditors, Mr. Anderson suggests here that the policy is not a potential asset of the estate because "the policy could only be sold with the consent of both the owner and the insured" and "Anderson would not consent to such." (ECF No. 152 at 5.)  He fails, however, to explain why the trustee, accruing to the rights of the Debtor as owner and beneficiary of the policy, would need the consent of the insured, Mr. Anderson.  The policy designates the Debtor as its owner and appears to give the right of assignment to the owner. (*See* Anderson Ex. 29 ("The owner may assign this Policy by requesting, completing and returning our conditional assignment of policy form to our Headquarters or our authorized agent.").) *See also, e.g.*, *Ohio Nat'l Life Assurance Corp. v. Davis,* 803 F.3d 904, 908 (7th Cir. 2015) ("Despite the fact that purchasers of a life insurance policy as an investment also have a financial stake in the insured's early death (the stake is at its maximum if the

---

[7] The Debtor testified that the policy requires quarterly premium payments of between $3,200 to $3,300.  The parties have not presented evidence on the current status of the policy, though their attorneys have continued to speak about it as though it is still in effect and with the same death benefit.

insured dies before the investor pays his first premium), the law allows an investor to purchase the beneficial interest in an existing policy on the life of the insured." (citing *Hawley v. Aetna Life Ins. Co.*, 291 Ill. 28 (1919))). Nor has Mr. Anderson shown that the Debtor's rights in the policy are not property of the estate. *See, e.g.*, 11 U.S.C. § 541(c)(1) (generally overriding any provision in an agreement, transfer instrument or applicable nonbankruptcy law restricting or conditioning transfer of a debtor's interest from becoming property of the estate).

At the status hearing held on December 17, 2024, counsel for the U.S. Trustee argued for the first time[8] that the mere fact that the Debtor filed a motion to convert in response to the Anderson Motion to Dismiss shows bad faith. The Court disagrees. It must be noted at the outset it is not accurate to characterize the Debtor's motion as a "response" to the motion to dismiss. The Debtor filed his motion before Mr. Anderson's, though both motions — and the motion of the U.S. Trustee — were filed on the same day. At the scheduled hearing on confirmation of the plan, both counsel for the Debtor and for Mr. Anderson alerted the Court of their intent to file their respective motions, and the Court then set out a briefing schedule. Moreover, the mere fact that a request to convert is made after a request to dismiss does not in itself demonstrate bad faith. The Debtor indicated his intent to file the motion at the first hearing after balloting showed his plan to be unconfirmable and filed it within the

---

[8] The U.S. Trustee has filed a motion under section 1112(b) and related reply memoranda to argue that the failure to confirm a plan constitutes cause to dismiss or convert under section 1112(b) and to suggest that dismissal rather than conversion best serves the interest of creditors and the estate. (UST Motion, ECF No. 127; UST Reply, ECF No. 139; UST Am. Reply, ECF No. 143). "Alternatively, should the Court decline to dismiss the case, the U.S. Trustee requests this case be converted to chapter 7." (*See* UST Am. Reply ¶ 16.)

deadlines set by the Court.  The objectors have not demonstrated that the Debtor intentionally delayed seeking conversion or abused the confirmation process.

Finally, while Mr. Anderson has alleged conduct that may have some bearing as to the Debtor's good faith in other matters, including in his adversary proceeding pending against the Debtor, in the proceedings on the motions to convert or dismiss (and without prejudice to the adversary proceedings) he has failed to demonstrate that this chapter 11 case would necessarily be dismissed if converted to chapter 7.

Mr. Anderson's adversary complaint alleges the Debtor failed to account for and concealed certain income and commissions earned and various deposits and withdrawals from bank accounts. (Adv. No. 24-96004, ECF No. 1.)  The allegations regarding income and withdrawals were raised in the First Dismissal Motion as well. Following trial on that motion, a motion that focused on the claim that this case should be dismissed because it is a "two party dispute," the Court found that the evidence Mr. Anderson then chose to present failed to satisfy his burden.  Among other things, the Court found that Mr. Anderson then had failed to demonstrate that any particular statement on the Debtor's bankruptcy schedules or his testimony was false or misleading.  However, Mr. Anderson did not request a trial here, choosing instead to largely stand on the factual record presented at the April 2024 Trial to support the arguments he now raises.  The allegations in the adversary complaint remain contested and await adjudication.  It not being shown at this time that the

Page 23 of 26

Court should now revisit its earlier ruling, the Court will instead proceed to hear what evidence the parties may present at trial in the adversary proceedings.[9]

Courts must be wary of short-circuiting the procedural protections of an adversary proceeding on objections to discharge with a motion to dismiss (or objection to conversion on the argument that the case would inevitably be dismissed), especially where, as here, the factual record is in dispute and not fully developed. As the bankruptcy court observed in *In re Augugliaro*, adversary proceedings "incorporate significant procedural safeguards associated with a lawsuit" and allowing a creditor with a nondischargeability action "to simply seek the dismissal of the debtor's bankruptcy case" could "render those important safeguards meaningless." No. 20-32000-JDA, 2021 Bankr. LEXIS 2622, at *17 (Bankr. E.D. Mich. Sept. 24, 2021). Granting the Motion to Convert will result in the appointment of a chapter 7 trustee to safeguard, administer and investigate property of the estate. Conversion also will not preclude Mr. Anderson from challenging the Debtor's right to seek a discharge or the dischargeability of his debt, as his adversary proceeding will proceed to adjudication. Dismissal of the case at this time, on the other hand, will effectively prevent the Debtor from demonstrating whether he is entitled to a discharge.

---

[9] It is not clear that Mr. Anderson renews this argument in the current motion to dismiss, as he does not specifically allege concealment or false oaths in his response to the Debtor's motion or in his own motion to dismiss, aside from alleging that the insurance policy was inconsistently valued in the Debtor's schedules and motion to convert, (ECF No. 138 at 3), and stating that the First Dismissal Motion "is incorporated" into his pending Motion to Dismiss, (ECF No. 126 ¶ 3).

Finally, Mr. Anderson and the U.S. Trustee seem to argue that there are no assets for distribution, that the Debtor has no dischargeable debts and, therefore, that there is no legitimate purpose for him to seek conversion to chapter 7. But again, the objectors fail to prove these allegations. While Mr. Anderson's adversary complaint seeks a determination that his debt is nondischargeable, debts are excepted from discharge if "on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge." 11 U.S.C. § 523(c). The Debtor has answered the complaint, and the court expects to set a date for trial in the coming weeks so that this issue may be fully adjudicated. Additionally, the IRS and IDOR each claim only a portion of their debt to be entitled to priority treatment under section 507(a)(8), which amount would be thus excepted from discharge under section 523(a)(1). That being the case, the remainder of their claims would be unsecured and likely dischargeable. Mr. Anderson and the U.S. Trustee urge the Court to disregard the allowed unsecured non-priority claims of the taxing authorities on the grounds that Mr. Anderson's (contested) claim is much larger. But while the size of distribution to creditors and amount of debt discharged might be a consideration in the balancing test under section 1112(b), the fact that only a portion of debt will be discharged does little to suggest that a debtor commenced his bankruptcy in bad faith or has no valid purpose in seeking to convert his case to chapter 7 under section 1112(a).

Mr. Anderson expresses concern about encountering delay if this case proceeds in chapter 7. As noted above, Mr. Anderson has not demonstrated a failure to abide

by court orders or a pattern of delay and abuse in this case, and the Court expects the chapter 7 case and all related matters, including the adversary proceedings, to proceed with all due dispatch.[10]  Even if Mr. Anderson is skeptical about the Debtor's motivations, in chapter 7 much of the administration of the estate will be in the hands of an impartial chapter 7 trustee.  Concerns over delay and scheduling matters can be addressed as they arise, and it is premature to speculate as to possible delays in the chapter 7 proceeding.

## IV.  CONCLUSION

For the reasons stated above, the Debtor's motion to convert to chapter 7 will be granted by separate order.  This determination renders the Anderson Motion to Dismiss and the UST Motion moot, and they will be denied by separate order.

DATE: February 20, 2025

ENTER:

_____
Thomas M. Lynch
United States Bankruptcy Judge

---

[10] During the February 12 hearing, for example, the U.S. Trustee assured the Court that his office will expedite the selection of the chapter 7 trustee upon entry of the order converting the case.